NATIONAL SWEEPER CO. v. BISSELL CARPET SWEEPER CO.

(Circuit Court of Appeals, Second Circuit. January 16, 1918.)

No. 66.

1. PATENTS ⊝36—EVIDENCE OF INVENTION—COMMERCIAL SUCCESS.
   That a patented article has been commercially successful is an unsafe test of invention, unless the art presents a case of earlier efforts, unsuccessful because of the absence of what the patentee contributed, and followed by a wide success after that contribution was made.

2. PATENTS ⊝328—INVENTION—CARPET CLEANER.
   The Baender patent, No. 1,138,437, for a carpet cleaning device of the vacuum type and operated by hand, the wheels furnishing the power which operates the bellows, held void for lack of invention.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the National Sweeper Company against the Bissell Carpet Sweeper Company. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 242 Fed. 947.

Appeal from a final decree dismissing a bill in equity for the infringement of United States letters patent to C. L. Baender, No. 1,138,437, issued May 4, 1915, for a carpet cleaning device. The court below held the patent void for want of invention and the complainant appealed.

The patent was for a carpet cleaner operated by atmospheric exhaustion, or partial vacuum, and adapted to draw in along with the air and gather the dust from the carpet while the nozzle moved over its surface. The principle of its operation was that the hind wheels, upon which one end of the cleaner rested, were in mechanical connection with two bellows, so as to operate by their traction upon the carpet and in the forward motion of the cleaner alternately to compress and expand the bellows, thus creating a pressure less than one atmosphere. The air flowed in through the nozzle at the opposite end of the cleaner, which rested upon the carpet. There was a baffle plate within the dust chamber, designed to meet and throw down the heavier particles of dust, and at the top of the chamber a screen or filter to stop the finer particles of dust, so that they should not pass into the bellows. Claims 2 and 4 were in suit and read as follows:

"2. The combination in a pneumatic cleaner having traction wheels supporting the rear thereof, a dust receptacle removable from the cleaner and having a horizontal screen device in its upper portion, a suction nozzle supporting the front end of the receptacle, the exit from the nozzle entering the receptacle below the screen device, a suction device above the receptacle and connecting devices between the wheels and the suction device for operating the latter."

"4. In a sweeping appliance, the combination of a dust receptacle, a nozzle communicating therewith and supporting the front end thereof, a suction device over said receptacle and communicating therewith, screening means located between the nozzle and suction device, wheels forming the rear support of said appliance, and operative connections between the wheels and the suction device adapted to operate said device upon the rotation of the wheels."

The defendant's infringing device is a carpet sweeper of the same general character as that described in the patent, having a horizontal screen in its upper portion, through which the air must pass and be filtered before reaching the bellows, and distinguishable from the patent in suit only in that a portion of the weight is carried by two idler wheels near the nozzle. Some part of the weight of the forward end is, however, borne by the nozzle itself, and the issue of infringement turns upon whether, in spite of these wheels, the nozzle supports the front end of the receptacle. The greater part of the defendant's manufacture consisted of a cleaner of the same kind, except that, in conjunction with it, there was an old rotary broom operated by two traction wheels on each side. The issue of infringement is the same as to this machine as to the first; the nozzle bears some part of the weight of the forward end of the cleaner.

The art of vacuum cleaners was not new. In 1901 D. T. Kenney made application for a patent for such a cleaner, in which the suction apparatus was fixed permanently in the floor, preferably in the basement, and the partial vacuum was created by a suction pump operated by an engine connected with a large chamber. From the other side of the chamber there extended pipes of any length, which might go into several stories, and at the end of which there was a nozzle on a rod or handle. The operator could turn on or off the suction, and by pushing the nozzle over the carpet draw out the dust, which passed through the piping into the chamber. In Kenney's device two screens or filters were inserted between the pump and the chamber, so as to catch all dust which had passed into the chamber and had not been already precipitated to its bottom.

In 1896 J. J. Harvey applied for a patent (granted 1897, 577,854) of a similar sort, in which the suction bellows was operated at some distance from the nozzle by one man, while the nozzle was held and moved by another. This type is known as a two-man machine. In this a screen or filter was interposed between the nozzle and the bellows, to filter out all dust. In 1900 C. J. Harvey filed an application for a patent (granted in 1901, 673,603) for a vacuum cleaner operated manually by the compression of a piston within a cylinder. The piston was itself hollow, and had a nozzle at one end, and on expansion low pressure or partial vacuum was created within the interior of the piston, to equalize which air was forced through the nozzle and later passed into the cylinder chamber. Within the piston was placed a screen or sack filter to catch the dust and keep it from the valves in the piston head.

In 1905 one Conover applied for a patent (granted 1907, 847,278) for a vacuum cleaner in which the weight was supported in part by the nozzle and in part by two traction wheels about midway between the two ends, and in which the dust passed through the bellows and into a dust bag put over the top of the machine. This was the first machine driven by traction wheels and designed as a substitute for the old-fashioned hand-driven carpet sweeper. Buell, 949,370, and Dudley, 924,542, were machines of the same kind, each application being earlier than Baender's, but later than the date to which it must be assumed in this record he could carry back his invention.

The plaintiff's machine, which embodied not only the Baender patent, but Sturgeon's, 996,810, and Quist & Blanch reissue, 13,508, quickly attained wide popularity and sale. In its earlier form it contained no auxiliary carpet brush sweeper, but subsequently this was added to pick up the larger particles which would not pass through the nozzle.

C. L. Sturtevant, of Washington, D. C., Louis W. Southgate, of New York City, and L. S. Bacon, of Washington, D. C., for appellant.

Drury W. Cooper, of New York City, and Fred L. Chappell, of Kalamazoo, Mich., for appellee.

Before WARD and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). The patent can succeed over Conover only by virtue of the position of the screen and of the wheels. To place the screen between the nozzle and the suction device was old in other forms of the art. It existed in Kenney, in C. J. Harvey, and J. J. Harvey. The only color for invention in this particular arises from the fact that these latter are not hand-driven machines, deriving their power from traction wheels, upon which their weight rests. As a new question, and without its subsequent success, we should have no question that the position of the screen on the near side of the bellows was not invention, in the face of the disclosures in this case. Indeed, we should have great doubt whether, without those disclosures, it would be invention to screen out the dust before it reaches the bellows, rather than to let it pass through and clog the valves. We find it difficult to look at this feature, except as one which the inevitable course of experience in the art would have soon suggested, if it has not been done at the outset, and as one which, once suggested, required no mechanical invention to adapt to a hand-driven carpet sweeper.

[1] The plaintiff must rely, therefore, and, indeed, it does largely rely, upon the success which its sweeper has attained, and we are forced, therefore, to a consideration of the propriety of that test here. It is true that the books are full of cases in which courts have regarded the success of the plaintiff's patent as an important test of invention, and we are in no sense disposed to question its value in proper cases. Yet it is a hazardous rule, and one which is quite likely to result in confusing genuine invention with imagination in advertising and energy and business skill in promotion. Where the art presents a case of earlier efforts, unsuccessful because of the absence of what the patentee contributed, and followed by a wide success after that contribution was added, it is reasonable to infer that the art needed that feature, and that it was not so easy to invent as might seem to us, who necessarily have no proficiency in the art.

It by no means follows that every successful exploitation of a patent complies with these conditions; there are many other reasons for success, which need not be detailed. In the case at bar three companies commenced the manufacture of these cleaners, all substantially similar in kind, and each competed with the other two. The Domestic Company commenced selling them as early as 1910, and its sales rapidly increased. The Wright Company began its sales early in 1911, and likewise quickly became successful. The National Company began at some time not definitely stated, before which and in 1908 Baender had made some 2,000 machines—at least, such is the assertion. The mutual competition of these companies compelled a consolidation of their interests, which occurred in January, 1916. Now, we may assume for argument's sake that each of these companies manufactured from the outset under each of the three patents, and that the credit of the invention is to be attributed equally to all; yet it is obviously quite impossible to say that the success was due to any one of the

elements contributed by all. It is, indeed, impossible, upon this record, or upon all three records, for us to say that the success was due to all three together, assuming that would serve if we did. We do not question that success awaited any successful hand-driven vacuum cleaner; but we must be able to attribute the success to the invention, and the dominant idea rested, as it seems to us, rather in the general conception of such an appliance, set forth certainly in Conover, which, if indeed it was as it stood, likely to become clogged in the valves, only required changes sure to be realized as the art progressed, and already disclosed in three varieties of existing cleaners of other species.

The "idea" of such a cleaner seems to have become fruitful at about this time in many instances: Buell, Dudley, Baender, Sturgeon, Applegate, and Quist, all between 1907 and July, 1910. Conover it is true, was earlier, his British patent dating from 1904; and if there was any basic disclosure it was this, upon these records. Yet, disregarding Conover, the art presents a picture suggestive rather of a commercial opportunity discovered than any necessary invention. Each of these patents would, so far as we can see, have answered as well as any other, with such modifications as would be sure to suggest themselves in the progress of the art. In such a case, we ought to scrutinize, not without some jealousy, the claims of any single contributor to a monopoly of his own details.

The conclusion of the examiners in chief finally granting the patent scarcely justifies the assumption that the position of the screen weighed very much in their minds. They appear to have depended quite as much upon the distribution of the load between the wheel and the suction nozzle, an advantage which turned out to be of no moment, or perhaps upon the general compactness and advantage of the arrangement of the parts, which is not claimed, and hardly could be. Furthermore, the appearance in the art, even if it was in fact later than Baender's invention, of the device of Ander's British patent, suggests that there was no divination necessary to the location of the screen where Baender placed it.

We agree, therefore, with the District Court in holding the patent void for lack of invention, and the decree will be affirmed, with costs.