**EISLER et al. v. GENERAL ELECTRIC CO.**

**GENERAL ELECTRIC CO. v. EISLER et al.**

Circuit Court of Appeals, Third Circuit.
May 12, 1928.

Nos. 3725, 3748.

1. Patents ⊙⟹328—1,128,120 for electric light bulb filament support wire-inserting machine held not infringed.

Fagan patent, No. 1,128,120, for machine for inserting wire in glass buttons of electric light bulbs to form a frame to support filament, *held* not infringed.

2. Patents ⊙⟹328—1,220,836, claims 1–5, for electric light bulb filament support wire-inserting machine, held invalid.

Patent No. 1,220,836, claims 1–5, for machine for inserting wires in glass buttons of electric light bulbs to form frame to support filament, *held* invalid for lack of invention.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Patent infringement suit by the General Electric Company against Charles Eisler and

another. From the decree, both parties appeal. Reversed in part, and in part affirmed.

Richard Eyre and Charles H. Keel, both of New York City, for Eisler.

Hubert Howson, of New York City, John H. Anderson and Charles McClair, both of Schenectady, N. Y., and Howson & Howson, of New York City, for General Electric Co.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. [1] This case concerns the insertion by machinery of wires in the glass buttons of electric light bulbs to form a spider or frame to support the filament. In the earlier art this was a tedious, laborious, and somewhat unsatisfactory process. The glass button was first formed. It was then moved by hand to a position where a flame struck the spot where a wire was meant to be inserted and heated to softness, and the delicate wire was then picked up by nippers and its point pushed into the yielding glass at this spot. The button was then rotated until another desired spot was reached, where the process was repeated, and another wire was put in by hand, and so on one at a time until the desired number of wires were successively and individually inserted. This hand process the General Electric Company, as assignee of John T. Fagan, sought to improve upon by a machine shown in an application made by Fagan on June 12, 1908, which resulted in the grant on February 9, 1915, of patent No. 1,128,120, for a "machine for manipulating glass rods and forming spiders therewith." The prior hand art from which Fagan sought to depart, its method and its faults, were stated by him in his specification as follows:

"These spiders have heretofore been made by hand, and their production has been subject to those obvious disabilities which attend the manufacture by hand of articles of this nature. With the individual factor of the operator entering into the equation, the production of fused zones, ordinarily in the form of buttons, has not always been properly done, and it frequently has happened that the anchor wires inserted into the buttons are not properly spaced and touch at their inner ends, so that a shunting of the current results. It will be apparent also that hand production is comparatively slow."

The significant departure and contemplated improvement by Fagan in the way of output quantity was in concentrating the making of a spider into a single, mechanical operation which consisted in heating the entire desired button circumference and driving the wires simultaneously into such softened circumference. In other words, he gave up spot heating of the button and successive driving in of the wires. It is quite evident that if Fagan's unitary heating of the button and this simultaneous driving in of all the wires proved workable, the quantity production of this rapid machine operation would be a great advance over the hand process with its series of successive tedious wire insertions. Moreover, it will be apparent that the depth of wire insertion by Fagan's machine's precision would be so uniform and accurate that the short-circuiting incident to wires being inserted to an undue depth by the hand process would be avoided. In view of these asserted advantages, the office granted the patent in question, not for a process, but for the machine Fagan described in his specification. Whatever may have been the cause, Fagan's machine, so far as the proofs in this case disclose, never made any impress on the art, or indeed was put into practical use. In view of the fact of the large use of electric bulbs and the great quantities of such articles required in business of his assignee, the General Electric Company, and its large resources which enabled it to utilize Fagan's machine, it is significant that it was not put into use; and this tends to warrant the belief that, while theoretically promising, it was disappointing practically, or at least that, if patentable, its claims should be limited to covering substantial duplications thereof.

So regarding it, we are of opinion the defendant's machine does not infringe. It has gone back to the old hand art, and, instead of discarding that art as Fagan did, has utilized it, and has simply transformed the method and means of that hand art, and embodied that hand method in two separate, nonco-operating machines. In one of such machines it forms the button just as the old hand method formed the button initially. Then it swings the cooled button around to a point where a separate mechanism utilizes the old successive hand method of spot-heating a single place on the button and inserting by machinery instead of by hand a single wire at that spot-heated part of the button. This done, the machine then spot-heats another point of the button, and then and there inserts another wire just as the hand worker did. And this operation of spot-heating and successive wire insertion is carried on until the spider is finished. In other words, the defendants' machine simply does by machinery what the old art did by hand, and it does what Fagan got his patent for discarding;

namely, spot-heating of the button and successive insertions of successive wires. It will thus be seen there was no identity of operation in Fagan's and the defendants' machines. On the contrary, they worked on two divergent and indeed contrasted methods. The defendants' machine uses the old hand method, while Fagan discards that hand method and substitutes therefor a machine method which it is physically impossible to do by hand because both hands and the most concentrated attention were required to fuse the glass and insert one wire at a time in such hand method. And it is significant that the plaintiff's machine, which it is contended embodies Fagan's patent, resembles the defendant's machine, in that it heats the button in spots and inserts single wires successively. [2] Seeing then, that Fagan's machine did not embody the old hand process, we note the fact that shortly thereafter, to wit, on November 22, 1909, George W. Beadle applied for, and on December 10, 1912, was granted, patent No. 1,046,724, for a machine for manufacturing supports for incandescent lamp filaments. Without entering into details, it suffices to say that his specification discloses a mechanism which utilizes and automatically uses, without manual aid, the old hand operations of heating successive spots on the button and inserting successive wires at such spots. Such being the case, it is apparent that when Fagan, in conjunction with Frech, on October 1, 1913, applied for their patent No. 1,220,836 for a filament support wire-inserting machine, which utilized the hand process, the disclosure in Beadle's patent of a mechanical adaptation of the hand process gave Fagan and Frech a secondary and minor place in the art of adapting the hand process to machine operation. And, as the defendants' machine follows the particular mechanism of Beadle more closely than it does that of Fagan and Frech, it is not an infringement, unless it uses some valid detail of the latter's device. Such infringement is alleged of claims 3, 4, and 5, which embody the use of a cold blast jet after the wire is inserted. This feature is thus described in their specification: "Moreover, means are provided for fusing that portion of the button which is to receive a wire, and a cooling means is provided which is brought into action immediately after the insertion of the wire to cause the rapid solidification of the glass around the end of the said wire." No such blast was shown in the Beadle device, but the court below held it was nevertheless invalid, saying: "The claims 3, 4, and 5 relate to a cooling blast feature, after

the wire is inserted. I fail to see anything new in this. There certainly cannot be patentable novelty in cooling glass after it has been heated and the wire fused. This makes it unnecessary to consider the patents cited in anticipation of this feature"—conclusions in which we concur.

Another detail of Fagan and Frech's patent was the delivery of the fusing gas flame angularly which is embodied in claims 1 and 2, and which is thus described in their specification: "The glass-fusing means comprises means for directing a flame against a portion of the edge of the button on the glass rod, and the said means is angularly disposed relative to the plane of the said button so that there is no danger of injuring wires previously inserted in the button." In view of the advanced state of development of this art of glass blowing, of the high grade of engineering skill employed therein, we are of opinion that, when the old hand process was sought to be employed mechanically, such angular disposition of the flame was a natural and evolutionary mechanical advance, and involved no invention.

Summarizing our conclusion, we hold patent No. 1,128,120 has not been infringed, and claims 1, 2, 3, 4, and 5 of patent No. 1,220,836 are invalid; the costs here and below to be paid by the plaintiff.