**STANDARD OIL DEVELOPMENT CO. v. JAMES B. BERRY SONS' CO., Inc.**

No. 2862.

District Court, W. D. Pennsylvania.

April 17, 1936.

Fish, Richardson & Neave, Merrell E. Clark and Charles H. Walker, all of New York City, Brown, Critchlow & Flick and Jo. Baily Brown, all of Pittsburgh, Pa., and Joseph V. Meigs, of New York City, for plaintiff.

Thomas G. Haight, of Jersey City, N. J., William F. Hall, of Washington, D. C., L. Clyde Strickland, of Pittsburgh, Pa., E. J. Jones, of Bradford, Pa., and Byrnes, Stebbins & Blenko, of Pittsburgh, Pa., for defendant.

GIBSON, District Judge.

The court makes the following findings of fact:

1. This is a suit for the infringement of two patents relating to the distillation of petroleum. Loomis patent No. 1,756,032, issued April 29, 1930, upon an application filed June 8, 1922, is for a process applicable to the distillation of crude petroleum generally, or petroleum from which the lighter fractions have been removed. Loomis and Lewis patent No. 1,746,198, issued February 4, 1930, upon an application filed June 2, 1924, is for a method for the vacuum distillation and rectification of paraffin distillate.

2. These two patents are owned by the plaintiff, Standard Oil Development Company, a subsidiary of the Standard Oil Company of New Jersey. The defendant, James B. Berry Sons' Company, is a Pennsylvania corporation, a subsidiary of the Quaker State Oil Refining Company, and conducts the operations against which the suit is directed at its refinery at Oil City, Pa.

Findings Relating to the Loomis Patent.

3. Petroleum is a very complex mixture of different hydrocarbons which may be separated according to their volatilities by distillation.

The conventional method of distillation in use at the time of the Loomis invention in 1922 involved the use of large cylindrical vessels known as shell stills. In its simplest form, this distillation was conducted by placing a charge of oil in a still and applying heat. The constituents of the highest volatility were vaporized first and, as the temperature was increased, constituents of progressively lower volatility were vaporized. The vapors were condensed and the condensate segregated as desired to form the various commercial products such as gasoline, kerosene, etc.

Shell stills were also used in batteries to enable continuous operation. In this operation the oil was passed through a series of shell stills maintained at progressively higher temperatures, products of successively lower volatility being vaporized and withdrawn from the respective stills.

In some distilling operations the oil was heated in a coil pipe heater placed in a furnace.

4. Rectification columns were sometimes used in connection with shell stills to improve the separation between products of relatively high volatility, such as gasoline, kerosene, etc. This was accomplished by passing the vapors from the shell still upward through a column which contained means, such as "bubble plates," for compelling intimate contact between the rising vapors and a descending stream of liquid "reflux" condensed from the vapors at the top of the column. The heat for this operation was conventionally applied to the still at the bottom of the column. In the conventional use of a rectification column, the product was fed to the middle of the column, and this was done in some operations.

5. Petroleum is quite sensitive to heat, its heavier molecules decomposing if maintained long at high temperature. Sometimes, as when large quantities of gasoline are desired, petroleum is deliberately decomposed or "cracked" by subjecting it to high temperatures. But any considerable destruction of the heavier molecules is disadvantageous where it is desired to produce lubricating oils.

6. Two outstanding characteristics of shell still operation were the long time during which the oil was maintained under heat and the relatively high temperature necessary to secure the desired vaporization. Both of these things were correlatively conducive to decomposition. The temperatures required to vaporize lubricating stocks in shell stills at atmospheric pressure are within the cracking range.

7. The process disclosed by the Loomis patent for the distillation of petroleum is carried out with the aid of one or more pipe stills and rectification columns. Considering the operation of a single pipe still-bubble tower unit, the oil is passed rapidly through the pipe still—a coil located in a suitable furnace—and is heated in this way in a very short time to a temperature sufficient to vaporize that portion of the feed which it is desired to remove as distillate and also enough of the balance to serve as reflux in the rectification column. The entire feed (both the vaporized and unvaporized portions) is then discharged from the pipe still directly into an intermediate zone of the rectification column. The feed contains substantially all of the heat that is required for the operation. The specifications, however, mention steam, in open or closed coils, as a heating means at the bottom of the column. Also, heated product from the second unit is returned to the preceding

unit. Steam is admitted at the bottom and rises through the column in intimate countercurrent contact with the descending liquid in one form of the operation. Light fractions dissolved in this descending oil are "stripped" from it by the rising steam. The rising steam passes through the liquid in the separating chamber and continues upward in the column with the vaporized portion of the feed. A portion of the vapor reaching the top of the column is condensed and permitted to flow back down the column against the rising vapors. The interaction between this descending condensate, or reflux, and the rising vapors gives a rectificatory separation between the distillate and the residue.

The residue from this column may be fed to a second pipe still-bubble tower unit where it undergoes a similar treatment.

Either or both of the columns may be operated under vacuum to reduce the temperature required for the distillation.

As a result of its operation, each unit puts out one distillate and a residue.

8. The use of the pipe still greatly reduces the time under heat. It also assists in the prevention of cracking by the vaporization of the heavy fractions in the presence of the light ends. The carrying effect of the light ends, which is utilized in this "flash" vaporization, enables a greater amount of vaporization to be obtained at the same temperature, or the same amount of vaporization at a lower temperature, than could be obtained by the progressive vaporization of the old shell stills.

The application of the heat for the rectification operation to an intermediate point in the rectification column (through the feed stream) combined with the steam stripping of the unvaporized portion of the feed flowing down through the column, enables the operation to be conducted at a lower temperature level than would be possible if the heat were applied at the bottom of the column, as in shell still operations, and therefore permits the vaporization and rectification of heavy oils that could otherwise not be vaporized and rectified without cracking.

The imposition of a vacuum upon the system, which further reduces the temperature necessary for a given vaporization, also contributes to the ultimate result.

9. Claims 10, 11, and 12 of the Loomis patent are in suit. Claim 12, which is typical, is as follows:

12. The method of distilling hydrocarbon oils which comprises passing the oil in an externally heated confined stream through a heating zone, discharging the oil into an unheated separating chamber, supplying steam in said chamber so as to pass through the liquid therein, removing separated vapors and steam from said chamber, subjecting the removed vapors and steam to a controlled refluxing action and returning reflux to the separating chamber."

Claims 10 and 11 are substantially the same except that they do not include the provision that reflux is returned to the separating chamber and claim 10 specifically includes the operation of the system under vacuum.

10. The claims in suit were taken from Hunneman patent No. 1,676,609, issued July 10, 1928, and were made in a renewal application by an amendment filed July 2, 1929, seven years after the original application was filed. The renewal application was made by plaintiff, and was not supported by oath of the original patentee, Loomis, that he was the inventor. The claims in suit were presented four years after the patentee, Loomis, and Mr. Howard, an officer of plaintiff company, had seen the operation of a Peterkin still (patent No. 1,-709,874) which was substantially identical with defendant's atmospheric unit, and more than two years after the disclosure of said Peterkin still in "Heat Engineering," a publication widely distributed among the oil refiners of the country.

11. No single unit, or combination of units, as described by the specifications of the Loomis patent, have ever been put into commercial use.

12. The defendant is operating two pipe still-bubble tower units connected in series. The first of these units, referred to as the Foster-Wheeler unit, is operated at atmospheric pressure. The second, or Badger unit, is operated under vacuum. The operation column. Steam is admitted at the base the operation disclosed in the Loomis patent.

Crude petroleum is externally heated as it passes in a confined stream through the pipe still of defendant's Foster-Wheeler unit. It is then discharged into an unheated intermediate zone of the rectification of each of these units closely parallels of the column and at several upper parts of the column, and passes upwardly through the liquid descending, stripping out the light ends. The oil vapors and steam which flow upwardly through the column are sub-

jected to rectification by contact with a part of the condensate which flows down through the column. The operation of this atmospheric unit is covered by Loomis claims 11 and 12.

The reduced crude discharged from this unit as its residual product is fed to the vacuum unit. The operation of the vacuum unit is the same as that of the atmospheric unit except that the rectification column operates at subatmospheric pressure.

13. The method of petroleum distillation of plaintiff's Loomis patent discloses the use of a coil heater, the feeding of the heated oil from the coil to a middle section of a fractionating tower, the use of open steam for stripping purposes (one form), the subjecting of the steam with the vapors of the heated oil to a controlled refluxing action (i. e., by a condenser), and the maintenance of subatmospheric pressure upon the system. All of these elements were old in the petroleum art, and each acted to perform its ordinary and well-known function, the total result being the addition of the individual results of the elements of the operation.

14. All features of the claims of the Loomis patent are disclosed in patents of the prior art, as follows:

| | | | |
|---|---|---|---|
| Vaughan Patent | No. | 49,689—Aug. | 29, 1865; |
| Frasch Patent | No. | 845,735—Feb. | 26, 1907; |
| Borrmann Patent | No. | 1,220,067—March | 20, 1917; |
| Bergstrom Patent | No. | 1,271,654—July | 9, 1918; |
| Hudson et al. Patent | No. | 1,303,321—May | 13, 1919; |
| Koppers Patent | No. | 1,323,396—Dec. | 2, 1919; |
| Tschudy Patent | No. | 1,348,606—Aug. | 3, 1920; |
| Primrose Patent | No. | 1,614,689—Jan. | 18, 1927, |
| | | Filed April | 7. 1921; |
| Behimer Patent | No. | 1,936,657—Nov. | 28, 1933, |
| | | Filed April | 7, 1921; |
| Baudry Patent (British) | No. | 29,479—Dec. | 31, 1904. |

15. The method prescribed by the Loomis claims in suit was substantially shown by certain uses prior to application for the patent, viz., the operation of the Shell Company at Martinez, Cal., and the Fuqua Topping plant at Fellows, Cal.

16. More than two years before the issuance of the Loomis patent, the Foster-Wheeler Corporation had built and installed a number of stills in oil refineries which were substantially like defendant's atmospheric unit.

17. The defendant's operation varies from that disclosed by the Loomis specifications in that its first unit puts out a plurality of distillate streams, while the first unit of Loomis has but one distillate stream; also,

no heat is added to defendant's first unit by hot oil returned from the second unit to the bottom of the first, as in the Loomis specifications. Defendant's operation does not infringe plaintiff's patent.

Findings Relating to Loomis & Lewis Patent.

18. Some crudes, notably those from the Pennsylvania and Mid-Continent fields, contain a large amount of paraffin wax. This wax must be separated from the oil both because it has an independent value and because the oil is not useful until the wax has been removed. The wax cannot be removed from the oil by distillation because its volatility is the same as that of a certain portion of the oil. When this portion of the oil is vaporized, the wax is vaporized along with it and passes overhead into the distillate formed upon the condensation of the mixed vapors of oil and wax. This paraffin distillate, as the condensate is called, contains very valuable lubricating oils.

19. The customary and most convenient way of getting the wax out of the paraffin distillate is a method known as "pressing and sweating." The distillate is chilled to a temperature at which the wax will solidify or crystallize and is then pumped through filter presses. The oil passes through the porous fitering surfaces of these presses, while the wax is collected upon them in a cake. The oil remaining in the cakes of wax thus formed is "sweated" out by gradually warming the wax and allowing the oil to run off.

20. A most satisfactory separation between wax and oil can be effected in this way, provided the wax will crystallize to form a porous cake in the presses. This it will not always do. Sometimes the wax, instead of being crystalline in form, is a gummy or greasy substance having a consistency not unlike vaseline. Such wax will not form porous cakes in the presses, but clogs them up. Thus there are two kinds of wax-bearing distillate—distillate which can be pressed, and unpressable distillate which is known as "paraffin slop."

21. The first four claims of the Loomis & Lewis patent are in suit. The first claim, which is typical, is as follows:

"1. The method of obtaining high yields of a pressable paraffin distillate from a paraffin bearing crude petroleum from which constituents of lower boiling point than lubricating oil have been substantially removed which comprises heating the

crude oil to a temperature sufficient to cause vaporization and rectifying the vapor under vacuum to produce an overhead vapor consisting of paraffin distillate."

The second claim adds to this the step of conducting away and condensing the vapor. The third claim describes the rectification of the vapors in more detail, and the fourth adds to it the steps of condensing the vapors, and chilling and pressing the condensate.

22. The patent specifications show a shell still with rectification column, both operating under vacuum corresponding to an absolute pressure substantially equivalent to 30 mm. of mercury to allow a final still temperature of not over 640°F. No operation such as described in the specifications ever went into commercial use.

23. Defendant's operation is described in the thirteenth finding of fact, supra.

24. Several years before the claims in suit were filed, constructions substantially like that of defendant had been established in refineries in the United States.

25. All features of the claims in suit, operating in the same way to produce the same result, are disclosed in patents of the prior art, as follows:

Loomis Patent, No. 1,756,032, Application June 8, 1922;
Christman Patent, No. 1,009,049, Issued Nov. 21, 1911;
Koehler & Link Patent, No. 1,084,016, Issued Jan. 13, 1914;
Von Groeling Patent, No. 1,327,184, Issued Jan. 6, 1920;
Tweddle Patent, No. 99,975, Issued Feb. 15, 1870.

26. Defendant's operation does not have the same means of heating the oil to be treated as disclosed by the Loomis & Lewis patent, and does not infringe that patent.

### General Finding.

The charge that plaintiff has suppressed evidence has not been established by the proof.

### Conclusions of Law.

I. Claims 10, 11, and 12 of Loomis patent No. 1,756,032 are invalid for want of novelty.

II. Said claims are invalid, also, for laches in the presentation thereof to the Patent Office.

III. Said claims have not been infringed by the defendant's operation.

IV. Claims 1, 2, 3. and 4 of Loomis & Lewis patent No. 1,746,198 are invalid for want of novelty.

V. Said claims have not been infringed by defendant's operation.

VI. The plaintiff's bill of complaint should be dismissed.

### Discussion.

In its bill of complaint the plaintiff alleges infringement of two patents relating to the distillation of petroleum.

The first patent, No. 1,756,032, issued to Nathanial E. Loomis on April 29, 1930, upon application filed June 8, 1922, and renewed May 17, 1928. The claims in issue are Nos. 10, 11, and 12. The other patent is Loomis & Lewis patent No. 1,746,198, granted February 4, 1930, upon application filed June 2, 1924. The first four claims are in issue.

Crude petroleum contains a number of different hydrocarbons. Not to make too meticulous division, distillation may separate its elements into naptha, lamp oil, gas oil, paraffin distillate, heavy lubricating distillate, and asphalt. These components differ widely in volatility, some of them boiling at low, others at high, temperatures. These differences are utilized to separate the crude petroleum into different fractions.

Of the claims of the Loomis patent in suit No. 10 reads as follows:

"10. The method of distilling hydrocarbon oils comprising passing the oil in a confined stream through a heating zone, discharging the oil into a separating chamber, passing the unvaporized oil in countercurrent to a current of steam, subsequently subjecting said steam with the vapors from the separating chamber to refluxing action, and maintaining sub-atmospheric pressure on the system."

Claims 11 and 12 differ from 10, in substance, only in that they do not call for the use of a vacuum in the operation.

The patent drawing discloses two fractionating towers, with each of which is connected an ordinary coil pipe heater. From the heater the oil enters about the middle zone of the fractionating tower, the vaporized portion going upwards through intervening zones to a partial condenser, and thence to a final condenser; and the heavier portion going to the bottom of the tower, meeting in its passage a rising column of open steam, which was designed to release any volatile element still confined in the refluxing element. The remaining liquid portion of the charge is transmitted to the second fractionating tower, through its pipe

886

heater, where it is subjected to greater heat than was given it in the first heater. So heated, it is discharged into the middle part of the second tower, where the operation goes on as in the first tower. The drawing also discloses a connection between the lower part of the second tower with a corresponding part of the first. Its purpose is to conduct highly heated oil from the second to the first tower, to further aid in the release of volatile elements remaining in the reflux by adding heat. This return pipe is no part of the claims in suit.

It is plain, from the specifications of the patent, that the patentee contemplated a battery of stills, each unit turning out a volatilized portion of the charge from the top of the column, and a residuum from the bottom. While he contemplated the fractionation of crude petroleum, he indicated that such a result required more than the two units shown in his drawing. His main object seems to have been the treatment of lubricating fractions of petroleum.

The defendant's construction discloses two fractionating columns. The first, a column one hundred feet high, known as a Foster-Wheeler still, is an atmospheric, single flash distillation apparatus taking off a bottom product, and a plurality of side streams, each of which had been stripped prior to its withdrawal. It has a countercurrent flow, pipe heater, and uses radiant as well as convection heat. This unit was first set up in the plant of the Craig Oil Company in Toledo, in April of 1929, and was later purchased and installed by defendant. It produces from Bradford crude oil as distillates, gasoline, kerosene, and gas oil, and a residue of reduced crude as a bottoms product. Defendant's second unit, known from its manufacturer as a Badger still, is a vacuum, single flash distillation column, which puts out a top and a bottom product, and can, if desired, produce a side stream. It gets its charge from the bottoms product of the first unit. Open steam is introduced into each unit, there being three entrances for it, at varying heights, in the first unit, and one in the Badger unit, just above the pool of oil in the bottom of the tower.

Comparing the method of distillation described in the claims of the Loomis patent and defendant's method, it seems plain that the two are substantially identical, despite the fact that defendant's still is much more complex than that disclosed by the patent.

Defendant is engaged in the distillation of hydrocarbon oils. It passes the oil to be fractionated in a confined stream through a heating zone, and them discharges it into a separating chamber. The unvaporized oil then passes in countercurrent to a current of steam, and subsequently the steam and the vapors from the separating chambers are subjected to refluxing action. Defendant's first unit is not operated under sub-atmospheric pressure, which is a feature of the tenth claim, but with added features, fully complies with the wording of claims 11 and 12. The second unit, which is operated under vacuum, follows the entire procedure prescribed by the tenth claim.

Passing for the time the issue as to infringement, we come to the contention as to validity.

The defendant has advanced a number of reasons which, it contends, invalidate the patent. First, it declares that the specifications do not clearly set forth the subject-matter of the claim. It alleges that the specifications do not disclose, as an essential element of the operation, the use of open steam in countercurrent to descending liquids in the fractionating column for stripping purpose. It is therefore asserted that the claims in suit are directed to new matter and so invalid.

The Loomis patent application was filed June 8, 1922, and the patent issued on April 29, 1930. The claims in suit were not added for over seven years after the application. They were taken from the Hunneman patent No. 1,676,609, with which an interference had been declared. The Standard Oil Company of Indiana, which was assignee of the Hunneman patent, consented to the allowance to Loomis. The specifications, as they existed prior to the issuance of the Hunneman patent, seemed to contemplate the use of steam for heating purposes, rather than for stripping of the descending liquids in the tower. However, it is specified that the superheated steam may be admitted at the bottom of the tower "in open or closed coils as preferred." It would seem from this language that the patentee did not regard open steam stripping as an essential element of his invention. Indeed, in the instant suit, plaintiff's expert witness designated the use of steam for heating purposes as a useful though not a necessary adjunct of the process. It is admitted that open steam in the still, at the temperature of the admitted petroleum,

would have a cooling rather than a heating effect. Its use was well known when the application was filed.

■ The defendant further urges that the patent is invalid as to claims in suit because the patentee never made oath that he was the inventor of the method described in them. The claims were introduced in the patent through the effort of the assignee of Loomis, without any further affidavit from the patentee. This defense, as we think, depends upon the force of the preceding defense. If the specifications described the method of the claims, then no further oath was necessary; but if they did not, amendment and affidavit to the new matter was necessary.

Defendant asserts, in further defense, that the claims in suit are invalid by reason of the fact that they present a mere aggregation of features well known in the art, each functioning in its ordinary way, and all obtaining nothing beyond the sum of their individual results.

When the method of the claims in suit is examined, it is quite plain that each step in the process was taken before the patent application was filed. In fact, it is admitted by plaintiff's expert witnesses and its counsel that the individual elements of the Loomis process could be found over and over again in the prior art. The use of a pipe heater, the use of a fractionating column, the delivery of the feed from the pipe heater to an intermediate part of such column, the use of open steam for stripping purpose, and of vacuum to reduce the boiling point of high boiling elements, were all old—and old in the art of petroleum distillation. Plaintiff contends, despite the fact that all of the devices employed in the patentee's method were old and well known, that the patent discloses a combination of elements which led to new and useful results, and that petroleum stills built pursuant to the teaching of the patent specifications have attained great commercial success. These declarations are based upon the assumption that the large, complex, modern single pipe stills, with their plurality of distillate streams, have their origin in the Loomis patent. The proof in the instant case, however, does not establish this assumption as a fact. According to the testimony, no still was ever built which was in accordance with the drawings of the patent specifications; and three or four years before the patent claims in suit were filed, manufacturers had installed various stills which closely resembled the modern designs. Nothing in the evidence indicated that such manufacturers were in privity with plaintiff or its assignor or were acquainted with the Loomis application. Prior to the addition of the claims in suit to the Loomis patent, several patents for petroleum stills were sought and granted before the issuance of the Loomis patent. These patents disclosed stills more advanced in the art than that of plaintiff, but against which the claims in suit might have been read. Among such patents was Peterkin patent No. 1,709,874, filed March 25, 1926, and granted August 14, 1928. Dr. Loomis, the patentee, testified that he had seen an effective still similar to the Peterkin still in the yard of the Atlantic Refining Company about four years before the claims in suit were attached to his application.

■ The state of the art being as it was, it seems impossible that invention of the modern still, or of stills of the type of defendant's, can be claimed for Dr. Loomis, or that his idea developed into a still which had great commercial success. Just what Dr. Loomis conceived to be novel in his patent at the time his application was made is hard to say. That he thought it to be as wide as now claimed is inconceivable. Had he so considered it, surely he would not have waited four years after seeing the modern still of the Atlantic Refining Company before seeking to amend his claims. Such delay, in himself or his assignee, would unquestionably constitute gross laches which would invalidate his patent. In addition to the Atlantic Refining Company's still, a number of stills similar to defendant's first unit were set up, and must have been known to plaintiff, prior to the addition of the claims in suit. In such a condition of affairs, any widening of claim must be carefully scrutinized, as the growing art is more likely to be responsible for the enlargement than was original invention, even though the patentee be honest in his claim. We believe that such was the case in the claims in suit.

It must be kept in mind that none of the claims in suit recite the return of highly heated oil from a succeeding unit for the purpose of heating the oil being stripped in a preceding unit of the battery. As to the remaining elements in the method claimed, as has been stated, it is admitted

that each part of the process is old, but a new and useful combination of them is claimed.

An examination of a number of earlier patents discloses the fact that certain of them might have used the very words of the claims in suit. Notable among them is Frasch patent No. 845,735, for distilling and rectifying oil. In the example given in the specifications, kerosene is treated for the purpose of removing its low-boiling constituents. The oil is preheated in a shell structure. It then enters a nine-pipe heater in a heating zone, and from it enters a fractionating column at an intermediate point, being discharged into an unheated chamber of the column, where the vapors formed separate themselves from the oil which has not been converted and pass up the column, and the oil which has not been vaporized passes down the column. Open steam is supplied at the bottom of the column and passes through the liquid in it. The vapors and steam pass upward out of the column. The vapors and steam are subject to a refluxing action which is controlled. The patent teaches that the horizontal still, shown in the drawing, may be omitted, and open steam admitted at the bottom of the fractionating column. If this form were used, the method would be exactly that of the patent claims in suit. True, there is a slight apparatus difference, in that Loomis shows a coil heater, and Frasch sends the oil through a plurality of tubes in his invention. The one heater is the equivalent of the other. The Frasch patent was not cited against Loomis in the Patent Office.

No invention could be claimed by Loomis by the use of a coil pipe heater, as such a heating method was old in the art. The Shell prior use operative at Martinez, Cal., Behimer patent No. 1,936,657 (application January 17, 1922), Primose patent No. 1,614,689, each showed it, as did other prior patents, notably Trumble, Primrose, and Behimer, all of whom had the same basic idea as had Loomis, i. e., that cracking would be prevented if the oil were quickly heated to a degree sufficient to vaporize the low-boiling portions and immediately discharged into a fractionating element. To accomplish the desired result, each used a well-known tool of his trade—a coil pipe heater. Behimer differed from Loomis only in the type of fractionating tower used. See Standard Oil Co. v. Globe Oil Co. (D.C.) 9 F.Supp. 89, affirmed 82 F. (2d) 488 (C.C.A.7) on March 3, 1936.

Nor does it appear that any novelty existed in Loomis' discharge of his heated oil into an intermediate part of a fractionating column. Such was the conventional way of introducing liquid to be fractionated. It enters below the rectifying part of the column and above the stripping part. See Vaughan patent No. 49,689, issued August 29, 1865. This patent was for apparatus for the continuous distillation of petroleum. The drawing shows a fractionating column which differs from that of Loomis only in that it does not have a partial condenser at its upper end, and is without means to create a vacuum in the tower. The use of a condenser and of vacuum are admittedly but engineering expedients known for ages in the distilling art, and used in many prior patents. The Vaughan patent shows the use of open steam for stripping the liquid in the column, and, as in Loomis, the discharge of a distillate stream at the upper end, and a residuum product at the lower.

An examination of prior patents and uses makes it plain that Loomis' method of heating the oil was old; that his method of admitting the heated oil into the fractionating column was old; that the form of his column was old; that the action within the column was old; and that the method of discharge of the distillate and residuum was old. This being so, and the evidence showing that the actual owner of the patent, though extensively engaged in the distillation of petroleum, had never operated a still constructed either as a battery operation as exhibited by the Loomis patent or as a single column (as contemplated by the claims in suit), how then can it be claimed that the combination of old elements constituted valid patentability because it produced a new and valuable result?

■ Such a claim has no adequate foundation. It would have to be based upon the fact that the claims of Loomis can be literally applied to one or other of defendant's units. That application would overlook a number of features in defendant's unit additional to those exhibited by the Loomis specifications, among them the application of radiant heat to the column, which is alleged to be a vital feature in making defendant's tower workable. In any event, the language of the claims is not to be interpreted apart from examination of the specifications.

Such examination fails to make plain just what Loomis thought was his improvement upon the prior art. He does not compare his method with any other, nor does he point out any specific feature as new. It seems probable, in view of the then eastern practice of using shell stills in battery, that he supposed his improvement consisted in substituting fractionating towers in battery for such stills, and possibly stressed his return of hot oil from the second still to the first for heating purposes. His only vital idea was in his conception that lubricating fractions of petroleum, if quickly heated in and discharged from a coil heater into a vaporizing element, could be heated to a higher degree, with consequent greater vaporization, without cracking, than was possible in shell stills. In this idea he was anticipated by Trumble and Primrose, as stated.

■ With the exception of the return of hot oil from the second unit to the first, the patent discloses nothing but a combination of features, each well-known in the art when the application was made and each performing its known function, without any proof whatsoever that the combination produced anything more than the aggregate of the results of the individual elements.

The proof also shows that the claims in suit were directly met by the prior Frasch patent No. 845,735, particularly by a form of it not appearing in the drawings. The Shell Martinez operations, as to terms and essential features, also meet the claims. For this reason, and that included in the preceding paragraph, as well as others previously mentioned, particularly the addition of new matter in the claims, we are of opinion that the claims in suit are invalid.

■ Returning to the charge of infringement, we have patent claims filed seven years after the original application had been filed, and which had never been embodied in any commercial operation by their assignee. Several years prior to the date of the patentee's claims, a large number of petroleum stills were installed by others (defendant's, among others), which, in addition to the features recited in the claims, had other features that added to their efficiency and put them materially in advance of the still portrayed in the patent. This situation parallels the instant patent with that considered by Buffington, C. J., in Eisler v. General Electric Co. (C.C.A.)

26 F.(2d) 12, wherein he held that a paper patent should be limited to covering only substantial duplications thereof.

Upon this principle the court is constrained to find that defendant's still does not infringe the claims in suit.

Loomis & Lewis Patent No. 1,746,198.

■ This patent was for vacuum distillation and rectification of paraffin distillate. Application for it was filed June 2, 1924, and was granted on February 4, 1930.

The plaintiff relies upon the first four claims. The first claim is as follows:

"1. The method of obtaining high yields of a pressable paraffin distillate from a paraffin-bearing crude petroleum from which constituents of lower boiling point than lubricating oil have been substantially removed which comprises heating the crude oil to a temperature sufficient to cause vaporization and rectifying the vapor under vacuum to produce an overhead vapor consisting of paraffin distillate."

The second claim adds the carrying away and condensing of the vapor; the third claim amplifies the rectification feature; and the fourth adds to it the steps of condensing the vapors and chilling and pressing the condensate.

A description of defendant's still operation has been set out in the discussion of the Loomis patent in suit, and need not be repeated. The stipulation filed describes three operations wherein defendant produces paraffin distillate in its second unit, which operates under vacuum. All constituents lighter than lubricating oil have been taken off in the atmospheric unit and the residue is heated in the pipe heater of the vacuum unit to a temperature of 650° in running its 600 cylinder stock, and in running its 630 cylinder stock to 720°, and an overhead vapor consisting of paraffin distillate is produced and condensed.

The patentees, in the specifications, set forth, as their preferred form of apparatus for the practice of their invention, a battery of three stills, each having a fractionating tower, a condenser, and a receiver. The last two stills have also a vacuum pump, a chiller, and a filter press therewith. The drawings represent shell stills, and in the specifications a final still temperature of not over 640°F. under vacuum is given, a temperature less than that used in a pipe still. However, the specifications do not limit the still to any special form.

Preference is expressed for the bubble form of fractionating tower. The lighter fractions of the oil are distilled in the first still and tower of the battery. From the second still, which is under vacuum, the paraffin distillate vapors pass through the plates of the tower to a receiver, are pumped to a chiller, and finally to a filter-press. From the last still (under vacuum) a further quantity of paraffin distillate is secured which contains a quantity of paraffin wax.

Patentees state that steam may, to a considerable extent but not fully, take the place of vacuum to reduce the boiling point of the lubricating oil.

One examining the specifications and drawings, when they were filed, would undoubtedly have supposed that the stills of the patent were of the shell type, although that type was not specifically mentioned. If it be assumed, however, that defendant's coil heater may take the place of the still mentioned in the specifications, the still of defendant is described by the claims of the patent. Defendant's second heater and tower is under vacuum, the lubricating oil has been heated to a temperature sufficient to cause vaporization, and is discharged into a fractionating tower, and a rectified vapor consisting of paraffin distillate is produced and taken to a chiller and then to a filter-press.

As in the Loomis patent, the Loomis & Lewis patent presents a combination of tools of the oil distillation art, each of which long antedated the patent application. The filter-press was old; the chiller was old; the fractionating tower was old; distillation under vacuum was old, and even older was the shell still. And assuming that defendant's coil heater was the equivalent of the still of the patent, the use of the tools in the same order was not new, nor was the result of their operation in combination.

The Loomis patent in suit is a complete anticipation of the Loomis & Lewis patent in so far as the defendant's process is concerned. A very common product of Pennsylvania oil refiners was 600 cylinder stock. Dr. Lewis, expert witness called by plaintiff, admitted that a refiner, using a single unit of the Loomis patent and seeking as a residue product 600 cylinder stock, would get overhead a pressable paraffin distillate. He denied, however, that the refiner, prior to the teaching of Loomis and Lewis, would know that he had the distillate he actually did have. This argues such lack of enterprise and perception as seems hardly possible, but even so, the method of the Loomis patent was the method of Loomis & Lewis patent, and at best the latter patent disclosed nothing except a double use.

Tweddle patent No. 99,975, issued in 1870, discloses the same object and the same method as Loomis and Lewis, except that the latter patent discloses the use of a rectifying column in connection with each member of a battery of shell stills, while Tweddle shows a shell still operating under vacuum and thus reducing the boiling point of the oil being treated. If the Loomis & Lewis patent is valid, the validity is found in the addition of the fractionating column to Tweddle's disclosure.

The Circuit Court of Appeals for the Seventh Circuit, in an opinion filed March 3, 1936, 82 F.(2d) 488, affirming the decree of the District Court of the Northern District of Illinois in Standard Oil Co. v. Globe Oil & Refining Co., 9 F.Supp. 89, held that the use and effect of a fractionation column was well known at the date of the patent application, and that no one could appropriate it and exclude others from using it in any usual way for any purpose which it might be desired to apply it. In this case such a column had been added, in the patent, to a Burton cracking still. The patent under consideration, No. 1,392,584, was granted to Lewis and Cooke upon application filed May 7, 1917. While for a somewhat different use, the patent discloses a set-up substantially the same as that of the patent in suit.

The Koehler & Link patent No. 1,084,-016 has the same aim, and substantially the same method, as has the Loomis & Lewis patent. It claims a method of producing a large proportion of pressable paraffin distillate, and preserving the lubricating quality of the residue. It contemplates a shell still and rectification (although not by that name). The method differs from that of Loomis & Lewis, who heat the oil under treatment under vacuum and to a degree not greater than 640°, while Koehler and Link heated at atmospheric pressure and to 650°, or higher, at which heat they claimed decomposition would not occur, or would occur only so slightly as not to affect the quality of the lubricant stock. The Loomis & Lewis specifications do not contemplate the absolute pre-

vention of "cracking," but state that such decomposition should be reduced to a minimum. The claims in suit do not limit the temperature of the operation, and defendant heats its oil higher than 700°. The heating under vacuum admittedly was a mere engineering expediency, long known, which constituted no vital feature of invention. When the patent in suit is considered in connection with the Tweddle patent and the Koehler & Link patent (also with Christman patent No. 1,009,049, which was for a reflux condensing-dome upon a petroleum still), nothing of invention can be found in Loomis & Lewis patent. Reduced to their essentials, the claims in suit are only for the use of a fractionating element under vacuum.

As before stated, the general terms of the claims describing the method of the patent may be applied to defendant's operation. But when the claims are interpreted by the light of the specifications, a number of differences appear. The crude product to be treated, by the patent, is "crude petroleum from which constituents of lower boiling point than lubricating oil have been substantially removed." The defendant allows a considerable proportion of gas oil to remain in the oil to be treated. Under the patent, the oil is heated in a shell still to not more than 640°F. while defendant heats in a coil-pipe heater to 700° and upwards. The patentees heat, or rectify, the treated oil under a pressure substantially equivalent to 30 mm. of mercury, while defendant's pressure is vastly greater. The claims specify, as the result to be attained by their method, "high yields of a pressable paraffin distillate"; and the specifications state that the result is a "full yield of a paraffin distillate of a quality equal to that heretofore obtained only by resorting to cracking; but we obtain in addition an important additional yield of viscous paraffin distillate. * * *" The defendant, as the result of its single unit operation, did not obtain an amount of paraffin distillate equal to that theretofore obtained by cracking, or an amount substantially greater than that obtained by Tweddle.

These great differences existing, even though the Loomis & Lewis patent were to be held valid to a limited extent, which we do not do, that patent is not infringed by defendant's operation.

The bill of complaint will be dismissed.