## STANDARD OIL DEVELOPMENT CO. v. JAMES B. BERRY SONS CO., Inc.

### No. 6212.

Circuit Court of Appeals, Third Circuit.

Sept. 24, 1937.

Merrell E. Clark, Joseph V. Meigs, and Charles H. Walker, all of New York City (Brown, Critchlow & Flick, of Pittsburgh, Pa., of counsel), for appellant.

Wm. F. Hall, of Washington, D. C., and Thomas G. Haight, of Jersey City, N. J., for appellee.

Before BUFFINGTON and BIGGS, Circuit Judges, and DICKINSON, District Judge.

BUFFINGTON, Circuit Judge.

In the court below the Standard Oil Development Company charged James B. Ber-

ry Sons Company, Inc., with infringement of claims 10, 11, and 12 of patent No. 1,-756,032, applied for June 8, 1922, and granted April 29, 1930, to N. E. Loomis, for "art of continuous distillation," and claims 1–4 of patent No. 1,746,198, applied for June 22, 1924, and granted February 4, 1930, to Loomis and Lewis for "vacuum distillation and rectification of paraffin distillate." After final hearing that court, in an opinion reported in (D.C.) 14 F.Supp. 881, dismissed plaintiff's bill. Whereupon this appeal was taken.

The patents, which are now owned by plaintiff, concern the refining of crude petroleum oil and the recovery of the many and varied by-products thereof. The refining of petroleum is a highly developed art of long standing and one in which scientific specialists of high grade have been employed, and to that art and what may be looked for in the way of expected development may be applied what was said by this court in Hansen v. Slick, 230 F. 627, 632: "Modern conditions have made high engineering and mechanical skill ordinary incidents in many industries, and such technical skill is to be regarded as the incidental advance of commercial pursuits. It follows therefore that such advance in the art as results from this skill the public is entitled to avail itself of as a fruit of mechanical growth and advance."

These patents had, as they deserved, a most thorough study and an exhaustive discussion by the trial judge. By reference thereto we avoid needless repetition, and an attempt by this court to restate at length what has been so ably discussed by the experienced trial judge would be but closing in different language what he has thoroughly and sufficiently said. After full argument, the helpful discussion of counsel, and consideration had, we find ourselves in accord with the conclusions of the trial judge and we limit ourselves to stating some of the reasons which constrain us to so decide.

Taking up the Loomis patent, applied for June 8, 1922, and granted April 29, 1930, and studying the specification, it will be noted that, as found by the court on ample evidence, the patentee's combination device was, in and of itself and considered separately, old, in common use, and functioning in the same way as in the patent. Such being the case, it would reasonably appear that, when the patentee used those old elements, he would show the use of those elements in the then working art wherein they failed to produce certain results, and in his process and apparatus these old agencies were combined in a new way and would co-operatively function in a new way to produce a new or improved result or an increase in product. But this was not done. Indeed, the three claims here in question were not sought until July 2, 1929, some seven years after the application was filed, and even then these claims were not sought by the patentee, no affidavit was made by him, nor any averment that he was the inventor of the subject matter of such claims, nor was any explanation made of the seven years' delay in claiming them. And these omissions become more significant when, as the proofs show, four years after the application and three years before these claims were made, the patentee, in June 1926, saw distillation units, then placed on the market, corresponding to the alleged infringing device. Moreover, the claims when made, were taken from the Hunneman patent, which had been in infringement with this application.

In addition it will be noted that the specification states it is applicable to vacuum distillation, "my invention relates to the art of continuous distillation, and more particularly to continuous vacuum distillation." None of the three seven-year delayed claims here involved mentions vacuum. Indeed the court found: "The claims in suit were taken from Hunneman Patent No. 1,676,609, issued July 10, 1928 and were made in a renewal application by an amendment filed July 2, 1929, seven years after the original application was filed. The renewal application was made by plaintiff, and was not supported by oath of the original patentee, Loomis, that he was the inventor. The claims in suit were presented four years after the patentee, Loomis, and Mr. Howard, an officer of plaintiff company, had seen the operation of a Peterkin still (Patent No. 1,709,874) which was substantially identical with defendant's atmospheric unit, and more than two years after the disclosure of said Peterkin still in 'Heat Engineering', a publication widely distributed among the oil refiners of the country."

When in addition to the above is added what the court, supported by ample evidence, found, viz., "no single unit or combination of units, as described in the specifications of the Loomis patent, have ever

been put into commercial use," it will be seen that the alleged invention of the patent did in truth and fact in no way promote the progress of the refining art. When to the nonuse of the patent there is added the fact that the patentee was an experienced scientist, that he was in the employ of the plaintiff, that it had abundant means and every incentive to use the patent in its business if it had practical merit, we have a case where a court should not blanket an industry by enforcing a nonuse patent. Indeed, the pertinent decisions constrain us to couple with the application of claims of a patent the nonuse of the patent commercially in the art, for as well said by Judge Coxe in Lovell v. Seybold Mach. Co. (C.C.A.) 169 F. 288, 290, "The claims must be construed in the light of the contribution which the patentees made to the art. They should hold whatever of value they have added provided it involved invention to make the addition. It would, however, be grossly unfair to compel the builder of a practical working machine to pay tribute to one who has added nothing of substantial value to the art, simply because the language of his claims is broad enough to include the successful structure."

As to belated claims, this court in Hestonville, M. & F. Pass. Ry. Co. v. McDuffee, 185 F. 798, 802, said: "When therefore a patentee, seven years after his original application and enlightened by such intervening years of progress, seeks not to prosecute his original application, but to amend the same, and on the basis of such amendment to make claims of a different character from those originally made, it becomes the duty of a court to zealously and jealously scrutinize such belated application."

Indeed, the principles running through the decisions are that, unless the claims in litigation can stand on the original specifications, they cannot stand at all, and that, where the amendment of the specification was important enough to constitute alleged patentability, such amendment constitutes new matter and, by statutory provision, must be supported by the applicant's oath that he is the inventor thereof.

In respect to the present situation, where, as noted, Dr. Loomis, the applicant, had no part in the belated amendment and the claims then made and here involved, may well be applied the holding of the Supreme Court in Kennedy v. Hazleton, 128 U.S. 667, 9 S.Ct. 202, 203, 32 L.Ed. 576, "The patent law makes it essential to the validity of a patent that it shall be granted on the application, supported by the oath, of the original and first inventor, or his executor or administrator whether the patent is issued to him or to his assignee. A patent which is not supported by the oath of the inventor, but applied for by one who is not the inventor, is unauthorized by law and void, and, whether taken out in the name of the applicant or of any assignee of his, confers no rights as against the public. R.S. §§ 4886, 4888, 4892, 4895, 4896, 4920."

In view of the application of the decisions; the laches of the applicant, which the court found; the introduction of new matter in the belated amendment and the new claims unaccompanied by the oath of the patentee; and the anticipations of the prior art, we are justified in affirming the decree below on the opinion of the trial judge, which opinion, in reasoning, fact finding, and in conclusions therefrom, expresses our views.

In reaching the conclusion that the patent was void for lack of inventive novelty, we are deeply impressed, as was the court below, by the prior patent of Frasch, No. 845,735, which was not cited against Loomis in the Patent Office. Of that patent the trial judge said (14 F.Supp. 881, 888): "An examination of a number of earlier patents discloses the fact that certain of them might have used the very words of the claims in suit. Notable among them is Frasch Patent No. 845,735, for distilling and rectifying oil. In the example given in the specifications, kerosene is treated for the purpose of removing its low-boiling constituents. The oil is preheated in a shell structure. It then enters a nine-pipe heater in a heating zone, and from it enters a fractionating column at an intermediate point, being discharged into an unheated chamber of the column, where the vapors formed separate themselves from the oil which has not been converted and pass up the column, and the oil which has not been vaporized passes down the column. Open steam is supplied at the bottom of the column and passes through the liquid in it. The vapors and steam pass upward out of the column. The vapors and steam are subject to a refluxing action which is controlled. The patent teaches that the horizontal still, shown in the drawing, may be omitted, and open steam admitted at the

bottom of the fractionating column. If this form were used the method would be exactly that of the patent claims in suit. True, there is a slight apparatus difference, in that Loomis shows a coil heater, and Frasch sends the oil through a plurality of tubes in his invention. The one heater is the equivalent of the other. The Frasch patent was not cited against Loomis in the Patent Office."

The second patent involved is No. 1,-746,198, applied for June 22, 1924, and granted February 4, 1930, to Loomis and Lewis for "Vacuum distillation and rectification of paraffin distillate." It is now owned by the plaintiff. It was held invalid by the court below for want of novelty and also held not infringed. Whereupon plaintiff took this appeal. It was applied for some two years later than the Loomis patent above discussed. The art which it involves is correctly summarized in the court's finding of facts, as follows: "18. Some crudes, notably those from the Pennsylvania and Mid-Continent fields, contain a large amount of paraffin wax. This wax must be separated from the oil both because it has an independent value and because the oil is not useful until the wax has been removed. The wax cannot be removed from the oil by distillation because its volatility is the same as that of a certain portion of the oil. When this portion of the oil is vaporized, the wax is vaporized along with it and passes overhead into the distillate formed upon the condensation of the mixed vapors of oil and wax. This paraffin distillate, as the condensate is called, contains very valuable lubricating oils.

"19. The customary and most convenient way of getting wax out of the paraffin distillate is a method known as 'pressing and sweating'. The distillate is chilled to a temperature at which the wax will solidify or crystallize and is then pumped through filter presses. The oil passes through the porous filtering surfaces of these presses, while the wax is collected upon them in a cake. The oil remaining in the cakes of wax thus formed is 'sweated' out by gradually warming the wax and allowing the oil to run off.

"20. A most satisfactory separation between wax and oil can be effected in this way, provided the wax will crystallize to form a porous cake in the presses. This it will not always do. Sometimes the wax, instead of being crystalline in form, is a gummy or greasy substance having a consistency not unlike vaseline. Such wax will not form porous cakes in the presses, but clogs them up. Thus there are two kinds of wax bearing distillate—distillate which can be pressed and unpressable distillate which is known as 'paraffin slop'."

The patent's first claim, which is typical, is: "1. The method of obtaining high yields of a pressable paraffin distillate from a paraffin bearing crude petroleum from which constituents of lower boiling point than lubricating oil have been substantially removed which comprises heating the crude oil to a temperature sufficient to cause vaporization and rectifying the vapor under vacuum to produce an overhead vapor consisting of paraffin distillate."

As stated by the trial court, "the second claim adds to this the step of conducting away and condensing the vapor. The third claim describes the rectification of the vapors in more detail and the fourth adds to it the steps of condensing the vapors, and chilling and pressing the condensate."

The court found as a fact that "several years before the claims in suit were filed constructions substantially like that of the defendant had been established in refineries of the United States," and that "all features of the claims in suit, operating in the same way to produce the same result, are disclosed in patents of the prior art." It accordingly held the claims in issue were "invalid for want of novelty" and "have not been infringed by defendant's operation," and that "no operation such as described in the specifications ever went into commercial use." The question here involved is whether the court erred in dismissing the plaintiff's bill.

After consideration, we find no error on the part of the trial court and its findings and conclusions are warranted by the facts. Without rediscussing and restating the operations involved, we adopt and approve the reasoning and conclusions of the court as follows:

"As in the Loomis patent, the Loomis and Lewis patent presents a combination of tools of the oil distillation art, each of which long antedated the patent application. The filter-press was old; the chiller was old; the fractionating tower was old; distillation under vacuum was old, and even older was the shell still. And assuming that defendant's coil heater was the equiv-

alent of the still of the patent, the use of the tools in the same order was not new, nor was the result of their operation in combination.

"The Loomis patent in suit is a complete anticipation of the Loomis and Lewis patent in so far as the defendant's process is concerned. A very common product of Pennsylvania oil refiners was 600 cylinder stock. Dr. Lewis, expert witness called by plaintiff, admitted that a refiner, using a single unit of the Loomis patent and seeking as a residue product 600 cylinder stock, would get overhead a pressable paraffin distillate. He denied, however, that the refiner, prior to the teaching of Loomis and Lewis, would know that he had the distillate he actually did have. This argues such lack of enterprise and perception as seems hardly possible, but even so, the method of the Loomis patent was the method of Loomis and Lewis patent, and at best the latter patent disclosed nothing except a double use."

"As before stated, the general terms of the claims describing the method of the patent may be applied to defendant's operation. But when the claims are interpreted by the light of the specifications a number of differences appear. The crude product to be treated, by the patent, is 'crude petroleum from which constituents of lower boiling point than lubricating oil have been substantially removed.' The defendant allows a considerable proportion of gas oil to remain in the oil to be treated. Under the patent, the oil is heated in a shell still to not more than 640° F. while defendant heats in a coil-pipe heater to 700° and upwards. The patentees heat, or rectify, the treated oil under a pressure substantially equivalent to 30 mm. of mercury, while defendant's pressure is vastly greater. The claims specify, as the result to be attained by their method, 'high yields of a pressable paraffin distillate'; and the specifications state that the result is a 'full yield of a paraffin distillate of a quality equal to that heretofore obtained only by resorting to cracking; but we obtain in addition an important additional yield of viscous paraffin distillate. * * *' The defendant, as the result of its single unit operation, did not obtain an amount of paraffin distillate· equal to that theretofore obtained by cracking, or an amount substantially greater than that obtained by Tweddle."

So regarding, the decree below is affirmed.