**MURPHY v. COE, Com'r of Patents.**

**No. 7026.**

United States Court of Appeals for the District of Columbia.

Decided Sept. 26, 1938.

Sol Shappirio, of Washington, D. C., for appellants.

R. F. Whitehead, Solicitor, U. S. Patent Office, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

Appellants applied to the Patent Office for a patent on an opalescent lacquer, the process of making it, and a sheet of metal coated with it. The Office rejected the claims, for lack of invention, and appellants brought a bill in equity against the Commissioner of Patents under R.S. Sec. 4915, 35 U.S.C.A. § 63. The District Court sustained the Patent Office and dismissed the bill.

It appears that before appellants' lacquer there was on the market no cheap and durable opalescent finish for automobiles, radio parts, and similar surfaces. Opalescent lacquers were sometimes used and were considered attractive, but they were costly and short-lived. Those on the market involved the use of "pearl essence," obtained from fish scale, as one ingredient. Appellant Murphy used aluminum bronze (flaked aluminum) instead of pearl essence. The result was cheap and durable, as well as pleasing. Great commercial success followed. The novelty and utility of appellants' combination of materials are not questioned: the question is whether invention was involved. Appellants claim that there was invention (1) in using aluminum bronze to produce an opalescent lacquer, and (2) in using their proportions of aluminum bronze.

(1) Appellants' application was filed in 1931. Edwards, Aluminum Bronze Powder and Aluminum Paint, was published in 1927. It describes the use of aluminum bronze powder in lacquers, as giving "a film of somewhat frosted appearance with high light diffusion and attractive appearance. * * * The durability of lacquer films with outdoor exposure * * * is greatly increased by the addition of metallic aluminum flakes." It states that "The aluminum powder lends to the paint a certain silky luster which appears to give depth to the surface." It states that when aluminum bronze powder is used with cellulose plastics, "the powder flakes in different areas assume different orientations,

reflecting light beams in as many different directions. * * * Its appearance is also suggestive of mother-of-pearl. The appearance of the article changes according to the angle at which it is viewed with the eye, each new position bringing into play light reflections from a new combination of bronze powder flakes." In the light of these older quotations we cannot say that the conception by Murphy, in 1931, of using flaked aluminum in place of pearl essence to give an opalescent effect to a lacquer clearly required "some uncommon talent."[1] It does not meet the point to say that appellants' lacquers are cheaper, or more durable, or more opalescent, than any similar lacquers the prior art knew, or that they were promptly and widely used and imitated. Cf. Minnesota Mining & Manufacturing Co. v. Coe, App.D.C., 99 F.2d 986, decided June 30, 1938. Commercial success does not take the place of invention.[2] As Judge Learned Hand has said, "An invention is a new display of ingenuity beyond the compass of the routineer." Kirsch Manufacturing Co. v. Gould Mersereau Co., Inc., 2 Cir., 6 F.2d 793, 794.

(2) Appellants contend that their use of a greatly reduced proportion of aluminum, as compared with Edwards and the prior art, involved invention. They assert, and it is not denied, that the trade had long sought a lacquer which would do what theirs does. From this they argue that it was not obvious and must be an invention. But obviousness and invention are not a complete dichotomy. A prospector who strikes it rich is not an inventor. A man who changes the proportion of aluminum in a lacquer is not necessarily an inventor, however superior his result. To experiment with reduced quantities of one expensive ingredient may show commendable enterprise without showing the kind of talent connoted by the term invention. In Becket v. Coe, 69 App.D.C. 53, 98 F.2d 332, combinations of some five metals, in given proportions, to form a stain-resisting and deep-drawing alloy, were held patentable notwithstanding the fact that the metals and the proportions came within ranges previously disclosed by others. But, as this court pointed out, the prior art did not know a chromium-manganese-nickel-copper ferrous alloy of stainless and deep-

drawing properties. In the present case, on the other hand, the prior art did know a lacquer, made with aluminum bronze, which more or less approximated and strongly suggested the properties now termed opalescence. Moreover, the claims in the Becket application disclosed certain proportions; those in the present application disclose none. Appellants' specification sets forth certain formulæ as "typical," but the claims are in undefined terms such as "aluminum bronze in proportion to give said composition substantial opalescence without solid ground color effect." Since "under the statute, it is the claims of the patent which define the invention,"[3] it follows that if there were invention in appellants' proportions as set forth in the specification it would not aid them here.

Affirmed.

[1] Textile Machine Works v. Louis Hirsch Textile Machines, Inc., 302 U.S. 490, 499, 58 S.Ct. 291, 294, 82 L.Ed. 382.

[2] Textile Machine Works Case, supra.

[3] Altoona Publix Theatres, Inc., v. American Tri-Ergon Corporation, 294 U. S. 477, 487, 55 S.Ct. 455, 459, 79 L.Ed. 1005.