## L. SONNEBORN SONS, Inc. v. COE, Com'r of Patents.

### No. 7126.

United States Court of Appeals for the District of Columbia.

Decided March 20, 1939.

Rehearing Denied May 18, 1939.

Charles S. Grindle, of Washington, D. C., and Joseph V. Meigs, of New York City, for appellant.

R. F. Whitehead, Solicitor, United States Patent Office, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

The Patent Office rejected the claims in suit on the ground that they showed no invention over the prior art. Appellant, as assignee of the applicants, Silverman and Kessler, sued under Section 4915, R.S., 35 U.S.C.A. § 63. The lower court found that: "2. The Silverman and Kessler application discloses a process of treating a lubricating oil so as to lower the temperature point at which the oil ceases to flow ('the pour point'), said process consisting in adding to the oil a small amount of a metallic soap of a solid fatty acid, such as aluminum stearate, and an organic stabilizer such as triethanolamine. The bill contains both process and product claims. 3. The patent to Bennett et al. No. 1,806,735, discloses a process of lowering the temperature point at which the oil ceases to flow, in which there is added to the oil aluminum stearate and a high boiling alcohol, such as benzyl alcohol. 4. The articles on Triethanolamine published in Industrial & Engineering Chemistry of January, 1929, and Oil, Paint and Drug Reporter, of August 6, 1928, state the constituents of commercial Triethanolamine and many of its characteristics." The court concluded therefrom that: "1. The disclosure of the Triethanolamine articles is sufficient to suggest the use of triethanolamine as a stabilizer in lieu of the alcohols mentioned in the Bennett et al. patent. 2. It was not invention to use

triethanolamine with aluminum stearate in treating a lubricating oil to lower the temperature point at which such oil ceases to flow. 3. Plaintiff is not entitled to a patent on the Silverman and Kessler application containing the claims in suit which are claims 4, 10, 11, 12, 13, 15, 19 and 20 of that application. 4. The Bill of Complaint should be dismissed." This appeal is from the decree dismissing the bill. Claims 4, 13 and 20 are typical of the eight here involved and are set out in the margin.[1]

On oral argument in this court, the Commissioner conceded that appellant's claims have both novelty and utility. The sole remaining question is whether there was invention. Appellant's argument in support of invention proceeds as follows: In spite of the best methods of refining, lubricating oil produced from paraffin-base petroleum contains a residuum of wax; this wax causes the lubricating oil to freeze at low temperatures; the freezing results from the crystallizing of the wax into a web-like or honeycomb form, thus solidifying the whole body of the oil; when the oil in the crankcase of an automobile becomes solidified and the motor is started, free lubrication is delayed, with resulting injury or destruction of the engine; much experimental work has been done and a number of methods have been used to overcome this difficulty; partial success had been achieved by adding gasoline or kerosene to the oil, but while these volatile dilutents produced a low "pour point" and temporarily prevented freezing, they evaporated when the oil became hot and also thinned the oil and reduced viscosity; the applicants in the present case, after years of research and experimentation, worked out a solution for the problem which consisted of adding to the oil a small percentage of metallic soap composed of a solid fatty acid, such as aluminum stearate, and a small percentage of triethanolamine; the metallic soap has the effect of insulating the wax crystals, thus preventing the webbing or honeycombing which would otherwise occur; the triethanolamine stabilizes this insulation of the wax crystals and prevents reversion to the objectionable crystallized form; tests showed that the oil so treated maintains stable fluidity at low temperatures for about four weeks.

The claim of invention thus described is based on the theory of chance discovery. This is illustrated by the following questions and answers on cross-examination:

"Q. You just picked up any old chemical you could find and tried it. A. Yes, sir. We tried various sorts of things that were entirely different from triethanolamine.

"Q. And this being a new one, you just tried it? A. That is it, exactly. We get from time to time new things which come into the market. I have in my laboratory any number of things, and if we see them listed we order a sample and there it stands, and some day we think we will try this; and that is very common procedure in many laboratories. When we are in a pinch we will try anything."

While it is true that invention may be the result of accident, and one seeking a patent thereon need not understand or be able to state the scientific principles underlying his claim,[2] nevertheless, he is charged with knowledge of the state of the art and hence, even if he had no actual notice thereof and therefore was experimenting blindly, he cannot overcome the negation of invention which results from actual disclosure by the prior art.[3] It is necessary, therefore, for us to examine the prior art of lubricating oil production.

---

[1] "4. A lubricating composition comprising not less than approximately 99% mineral oil, and oil soluble metal soap of a solid fatty acid, and an organic stabilizer containing an amino group.

"13. A lubricating oil consisting of about 99% paraffin-base oil, less than 1% aluminum stearate and triethanolamine and having the permanent property of fluidity when its temperature is reduced to zero degrees Fahrenheit.

"20. The method of permanently modifying the fluid characteristics of paraffin-base mineral oil at temperature around zero degrees Fahrenheit, which consists in intimately mixing therewith less than 1% of aluminum stearate and a lesser amount of triethanolamine."

[2] Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 435, 436, 31 S.Ct. 444, 55 L.Ed. 527; A. O. Smith Corp. v. Lincoln Electric Co., 6 Cir., 82 F.2d 226, 227.

[3] Derby v. Thompson, 146 U.S. 476, 481, 13 S.Ct. 181, 36 L.Ed. 1051; Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 493, 20 S.Ct. 708, 44 L.Ed. 856; Pennington v. National Supply Co., 5 Cir., 95 F.2d 291, 295; Ruben Condenser Co. v. Copeland Refrigeration Corp., 2 Cir., 85 F.2d 537, 541, certiorari denied, 300 U.S. 665, 57 S.Ct. 508, 81 L.Ed. 873.

The Patent Office, in holding appellant's product and process devoid of invention, relied upon the following references: Bennett, No. 1,806,735, May 26, 1931; Hodson, No. 1,982,662, December 4, 1934; and an article entitled "Triethanolamine" appearing in "Emulsions" published by the Carbide and Carbon Chemicals Corporation in 1930. The Commissioner concedes that the latter two were too late to affect the claims in suit, and on this appeal relies solely upon the patent to Bennett and an advertisement published in August, 1928, by the Carbide and Carbon Chemicals Corporation entitled "Triethanolamine." He insists, however, that, in the light of the disclosures there made, Silverman and Kessler were "simply doing that which the art taught."

Appellant contends that the Bennett patent is not part of the prior art because it was not made public until after the filing of the application in the present case, and that in any event it cannot be combined with other references to defeat a claim of invention. This contention is answered adversely in our recent opinion in Minnesota Mining and Manufacturing Co. v. Coe, 69 App.D.C. 256, 100 F.2d 429, and in cases therein cited.

The Bennett patent described a process remarkably similar to that described by the applicants herein. In fact, in only one essential respect do they differ; i. e., the Bennett patent describes as stabilizers "high boiling alcohols and esters such as benzyl alcohol, cyclohexanol, glycerine and benzyl acetate," and later specifies that "any organic stabilizer * * * may be used." Applicants, on the other hand, specify—in two of their claims—"an organic stabilizer containing an amino [NH2] group"; and, in the others, they specify "triethanolamine."

The important and decisive question in the case, therefore, is whether the substitution of "an organic stabilizer containing an amino group," or "triethanolamine," in place of "any organic stabilizer" constitutes invention. In this connection it should be noted that triethanolamine is itself an organic stabilizer. Although it had never been employed as a stabilizer for low pour-point lubricating oils prior to its use by Silverman and Kessler, its use as a substitute for alcohol was not new to the art. The advertisement by the Carbide and Carbon Chemicals Corporation appearing in 1928 disclosed that triethanolamine reacts "both as an organic base [alkaline] and as an alcohol"; that it combines "freely with fatty acids such as oleic and stearic to form soaps that are freely soluble not only in water but also in gasoline and oil"; and that it "can replace, in whole or in part, various organic alcohols such as phenol, or glycerine in the manufacture of synthetic resins."

Applicant Silverman testified that he made samples according to Bennett and upon testing them got the following results:

The pour point of the oil before applying Bennett's procedure was plus 30° F. In the case of the sample made with benzyl alcohol according to Bennett, "after I had made the sample and tested it in the cold test bath, I found it was fluid down to —5° F. But, after 17 days in the ice box it had reverted to plus 15."

In the case of the sample made with glycerine according to Bennett, it had shown fluidity down to 0° F., but after 17 days ceased to flow at plus 25° F.

In the case of the sample made with cyclo-hexanol according to Bennett, "it was fluid down to zero when I first made it, but after ten days in the ice box test it ceased to flow at plus 25° F."

In the case of the sample made with the benzyl acetate, according to Bennett, "while it showed fluid down to zero when I first made it, after a period of ten days in the ice box it would not longer flow below 30° F."

In other words, adopting the applicant's testimony without more, we see that the Bennett process produced fluidity at low temperatures, stabilized for periods of from ten days to seventeen days according to the organic stabilizer used; while the Silverman process—using triethanolamine as the organic stabilizer—produced fluidity at low temperatures, stabilized for a period of twenty-eight days.

It seems apparent, therefore, that Bennett's step from the use of volatile dilutents, such as gasoline and kerosene, was a much more difficult step than Silverman's and that the latter was indeed an easy one,[4] clearly indicated by the revelations contained in Bennett, together with the description of triethanolamine contained in the publication referred to by the Commissioner. "Es-

---

[4] Kirsch Mfg. Co. v. Gould Mersereau Co., Inc., 2 Cir., 6 F.2d 793, 794.

pecially in chemical and electrical experiments happy solutions may be reached by testing out variants reached merely by permutations of old elements. Possibly the patent law should protect such industrial achievements, but it does not; the work of the well-equipped laboratory which by trial and error checks off a series of formulas, may be the proper path of industrial advance, as the Germans found it to be before the Great War; but it does not demand what we call 'invention.' "[5]

Although genius is not required,[6] the conception sought to be protected by patent must be the result of more than "mere exercise of the skill of the calling and not one plainly indicated by the prior art."[7] Thus, while it may be conceded that what Silverman and Kessler have accomplished is new and useful, we are of the opinion that it does not rise to the dignity of invention.[8] "An invention is a new display of ingenuity beyond the compass of the routineer, * * *"[9] and a mere "showing of great industry in experimental research is not in itself sufficient to constitute invention, when the product thereof differs from those of the prior art only in degree and the result—no matter how useful it may be—is merely one step forward in a gradual process of experimentation."[10]

In the present case it is apparent that Silverman and Kessler, with the data relative to the chemistry of triethanolamine before them, did no more than could have been done by the ordinary chemist, skilled in the art, working toward the same end under like conditions.[11] The substitution of triethanolamine for other organic stabilizers in the claimed invention was an "obvious adaptation" of materials plainly foreshadowed by the teachings of the prior art, and required for its accomplishment "only search or research."[12] Mathieson Alkali Works, Inc. v. Coe, 69 App.D.C. 210, 99 F. 2d 443, upon which appellant relies, presents a clearly distinguishable situation.

And, finally, even conceding, as appellant contends, that its product and process satisfied a need in the industry and was a commercial success, resort may not be had to these facts to prove invention where lack of invention is not in doubt. As was said by the Supreme Court in Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp., 294 U.S. 477, 488, 55 S.Ct. 455, 459, 79 L.Ed. 1005: " * * * want of invention would have to be far more doubtful than it is to be aided by evidence of commercial success, indicating that it brought realization of a long-felt want."[13]

Affirmed.

---

[5] Ruben Condenser Co. v. Copeland Refrigeration Corp., 2 Cir., 85 F.2d 537, 541, certiorari denied, 300 U.S. 665, 57 S.Ct. 508, 81 L.Ed. 873. See also, Standard Oil Development Co. v. James B. Berry Sons Co., Inc., 3 Cir., 92 F.2d 386, 387.

[6] United Chromium, Inc. v. International Silver Co., 2 Cir., 60 F.2d 913, 917, certiorari denied, 288 U.S. 600, 53 S.Ct. 319, 77 L.Ed. 976.

[7] Electric Cable Joint Co. v. Brooklyn Edison Co., Inc., 292 U.S. 69, 79, 54 S. Ct. 586, 78 L.Ed. 1131; Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 79 L.Ed. 1005; Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 27 L.Ed. 438.

[8] Berlin Mills Co. v. Procter & Gamble Co., 254 U.S. 156, 166, 41 S.Ct. 75, 65 L.Ed. 196.

[9] Kirsch Mfg. Co. v. Gould Mersereau Co., Inc., 2 Cir., 6 F.2d 793, 794; Murphy v. Coe, 69 App.D.C. 225, 99 F. 2d 994.

[10] Minnesota Mining & Mfg. Co. v. Coe, 69 App.D.C. 217, 99 F.2d 986, 989. See also, Railroad Supply Co. v. Elyria Iron

& Steel Co., 244 U.S. 285, 37 S.Ct. 502, 61 L.Ed. 1136.

[11] Donner v. Sheer Pharmacal Corp., 8 Cir., 64 F.2d 217, 221, certiorari denied, 290 U.S. 658, 54 S.Ct. 73, 78 L. Ed. 570; Mills v. Coe, 69 App.D.C. 223, 99 F.2d 992.

[12] Pick v. Coe, 69 App.D.C. 216, 99 F.2d 985, 986; Textile Machine Works v. Louis Hirsch Textile Machines, Inc., 302 U.S. 490, 498, 58 S.Ct. 291, 82 L.Ed. 382.

Mershon v. Sprague Specialties Co., 1 Cir., 92 F.2d 313, 318, certiorari denied, 304 U.S. 561, 58 S.Ct. 943, 82 L.Ed. 1528: "Generally speaking, the mere substitution of one material for another will not amount to invention even when the new material is more effective." See Goldman v. Polan, 4 Cir., 93 F.2d 797, 799.

[13] DeForest Radio Co. v. General Electric Co., 283 U.S. 664, 685, 51 S.Ct. 563, 75 L.Ed. 1339; Premier Machine Co. v. Freeman, 1 Cir., 84 F.2d 425, 428, certiorari denied, 299 U.S. 580, 57 S.Ct. 45, 81 L.Ed. 428; Kaser Process Pie Co. v. Pie Bakeries of America, Inc., N.D.Ill., 50 F.2d 414.