**MORRISON v. COE, Com'r of Patents.**

No. 7583.

United States Court of Appeals for the District of Columbia.

Decided Oct. 6, 1941.

Spencer B. Michael, of Washington, D. C., and Donald M. Carter, of Chicago, Ill., for appellant.

W. W. Cochran and Mark Taylor, both of Washington, D.C., for appellee.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

MILLER, Associate Justice.

This appeal is from a judgment of the District Court, in a proceeding under Revised Statutes, Section 4915, 35 U.S.C.A. § 63, which upheld the determination of the Patent Office that appellant's claims did not constitute invention. The claims, which appellant relies upon as representative, and which are set out in the margin,[1] describe an automobile window assembly, consisting of a garnish moulding supporting a pivoting window, a sealing member, fastening devices to hold the garnish moulding in position around the window openings, and

[1] "14. An automobile window assembly comprising a garnish moulding surrounding the window opening and bent outwardly, an outside member bent inwardly and meeting the said garnish moulding, a window section pivotally connected with said outwardly bent portion of said garnish moulding, a sealing member attached to said outwardly bent portion of the garnish moulding, a lock connected with said window section, and a locking hasp connected with said garnish moulding and which is engaged by said lock to hold the window section in its closed position."

"8. An automobile window assembly comprising a garnish moulding having its edge bent outwardly to form a support, a sealing member carried by the outwardly bent portion of said garnish moulding, a pivoted window section having upper and lower pivots which extend through the outwardly bent portion of the garnish moulding so as to pivotally support the window section in position, and having a hollow space at the top and bottom of the window into which the pivots are received, and fastening devices for fastening the garnish moulding in position around the window opening."

"1. An automobile window assembly comprising a garnish moulding, a window frame made up from the garnish moulding which acts as a decorative element and also as the window support and into which the window section is placed, a sealing member surrounded by the garnish moulding and held in position thereby and acting as the sealing member for the window section, the garnish moulding extending around the inner face of the window opening and projecting beyond the window opening and fastening means on the inside of the automobile for fastening the garnish moulding in position."

a locking device to hold the window section in its closed position.

The problem which appellant sought to solve arose from the fact that modern automobiles are constructed with two separated sheet metal body walls, with opposed window openings in them and a separate garnish moulding on the inside of the inner sheet metal body wall with a window opening in it opposed to the other two window openings. Due to mass production methods these three window openings did not register. The problem therefore was to devise a window, pivoted between its front and rear edges, which could be easily and quickly placed in position, while the automobile was moving along the assembly line, in such manner that it would closely fit all three window openings and could be moved about its pivots to cross the walls of all three openings without striking any one of them. Appellant solved the problem; accomplished the desired result; his window is now in use on a number of the best known automobiles and its production runs into millions each year.

It is not enough to prove invention, however, to show either usefulness[2] or commercial success;[3] or both of them together.[4] Good salesmanship,[5] and a newly felt need may easily result in converting a well known device or scientific formula into a highly useful commercial product.[6] It must not be forgotten, in this connection, that the rewards which accrue, from successful manufacturing and marketing, to the person skilled in the art, as well as to him who supplies the capital investment, may be large indeed, even without the benefit of the monopoly which results from a patent. Much of the pioneer work of technical and scientific geniuses has long anticipated the needs of the day and left to the entrepreneurs of succeeding generations the material rewards which were denied the real inventors.[7] If the judgment of the

---

[2] Berlin Mills Co. v. Procter & Gamble Co., 254 U.S. 156, 166, 41 S.Ct. 75, 65 L.Ed. 196; Abbott v. Coe, 71 App.D.C. 195, 196, 109 F.2d 449, 450; L. Sonneborn Sons, Inc. v. Coe, 70 App.D.C. 97, 100, 104 F.2d 230, 233.

[3] Textile Machine Works v. Louis Hirsch Textile Machines, Inc., 302 U.S. 490, 498, 499, 58 S.Ct. 291, 82 L.Ed. 382; Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp., 294 U.S. 477, 488, 55 S.Ct. 455, 79 L.Ed. 1005; McClain v. Ortmayer, 141 U.S. 419, 428, 429, 12 S.Ct. 76, 35 L.Ed. 800; L. Sonneborn Sons, Inc. v. Coe, 70 App.D.C. 97, 100, 104 F.2d 230, 233, and cases cited in note 13; Minnesota Mining & Mfg. Co. v. Coe, 69 App.D.C. 217, 222, 99 F.2d 986, 991, and cases cited in note 17; Firestone Tire & Rubber Co. v. United States Rubber Co., 6 Cir., 79 F.2d 948, 954.

[4] Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 356, 357, 59 S.Ct. 897, 83 L.Ed. 1334; Richards v. Chase Elevator Co., 159 U.S. 477, 487, 16 S.Ct. 53, 40 L.Ed. 225; Republic Rubber Co. v. G. & J. Tire Co., 7 Cir., 212 F. 170, 172; Tubelt Co. v. Friedman, C.C. N.Y., 158 F. 430, 439.

[5] McClain v. Ortmayer, 141 U.S. 419, 428, 12 S.Ct. 76, 35 L.Ed. 800; Minnesota Mining & Mfg. Co. v. Coe, 69 App.D. C. 217, 222, 99 F.2d 986, 991, and cases cited in note 16; Battery Patents Corp. v. Chicago Cycle Supply Co., 7 Cir., 111 F.2d 861, 863; Tropic-Aire, Inc. v. Sears, Roebuck & Co., 8 Cir., 44 F.2d 580, 592, 593, certiorari denied, 282 U.S. 904, 51 S.Ct. 217, 75 L.Ed. 796.

[6] Duer v. Corbin Cabinet Lock Co., 149 U.S. 216, 223, 13 S.Ct. 850, 37 L.Ed. 707; Simons v. Davidson Brick Co., 9 Cir., 106 F.2d 518, 523. Cf. Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp., 294 U.S. 477, 488, 55 S.Ct. 455, 79 L.Ed. 1005.

[7] Cf. Frank Keiper, Pioneer Inventions and Pioneer Patents, 2d Ed. 1924, 126: "Changed conditions may make it [a patent] an active resource of great value. Many inventors are ahead of the times like Janney was with his car coupler. The hope of gain stimulates nearly all of us but many inventors are disappointed. Few inventors are good business men and capitalists. The combination of a good patent on a popular product with money and brains to push it is hard to beat for a business success. This combination seldom exists in the inventor alone. Inventions need capital the same as any other enterprise, but capital is exacting. It always demands control and usually gets it. On the other hand capital needs an enterprise and in normal times there is always a surplus that is always looking for enterprises. The inventor that knows how to raise money for the manufacture and marketing of an invention is doubly gifted."

Cf. also: Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 399, 400, 46 S.Ct. 324, 70 L.Ed. 651; Murphy v. Coe, 69 App.D.C. 225, 226, 99 F.2d 994, 995; Firestone Tire & Rubber Co. v. United States Rubber Co., 6 Cir., 79 F.2d

District Court and the determination of the Patent Office are correct this, apparently, is what happened in the present case.

■ The Commissioner contends, and the trial tribunals found, that appellant's disclosure was anticipated by Edwards patent No. 1,859,031, Edwards patent No. 1,859,080, and Donahue patent No. 1,763,603. The Edwards patents show window construction of the ventilating type for use in automobile bodies; a glass window is pivoted, between its front and rear edges, to a metal frame which in turn has a laterally extending portion which extends through the opening in the body; secured to this extending member is a flange which extends around the periphery of the window frame, and lies flat against the body of the car, thus sealing the crack between the frame and the car body. The frame is held in position by screws passing through the flange. Edwards' application states that his window construction is set as a unit in the window opening of the automobile body. The Donahue patent is relied upon by the Commissioner to show a rubber-sealing member, similar in purpose to the sealing member of appellant's disclosure.

Appellant seeks to distinguish the Edwards references from his own claims by reliance upon his incorporation of the garnish moulding into the window assembly, which is not mentioned in the Edwards patents. This, appellant calls a fundamental and essential element of his claims. The garnish moulding, he says, is a decorative device which has an already established position in the art. He found a new use or function for it, by modifying it so that in addition to being a decorative feature, it acted to support the pivoted window in the opening. This he did by enlarging it, by bending the portion around the central opening, outwardly, inserting it into the window opening with the garnish moulding on the inside and fastening it into position. This, he says, solved the problem and constituted invention.

■ But after all, as the Commissioner points out, the garnish moulding is, apart from its already established decorative feature, no more than a window frame, serving the same purpose as the frame described in Edwards; the modification of the moulding by enlarging and bending it resulted in nothing more than the lateral portion and flange described by Edwards; and the insertion and fastening of the whole assembly in the window opening corresponds to Edwards' specification that the window construction described in his application shall be set as a unit in the window opening. The only remaining difference is that in Edwards the flange and its fastening means are on the outside of the automobile body, while in appellant's disclosure that portion of the garnish moulding which serves as a flange, together with its fastening means, are on the inside. As the garnish moulding is a decorative feature which is required to be on the inside, the placing of it there in appellant's assembly was a matter of necessity not of choice. The claim of invention, therefore, boils down to this—turning the flange and fastening it on the inside instead of on the outside and combining it with the already established decorative feature, the garnish moulding. This, while useful and successful, and while meeting the new needs of automobile construction, certainly did not require inventive genius. A skilled mechanic, familiar with Edwards and the rest of the automobile art, made an adaptation thereof which was commercially successful, but which does not call for the privilege of a monopoly.

Affirmed.

---

948, 952, certiorari denied, 298 U.S. 679, 56 S.Ct. 945, 946, 80 L.Ed. 1399; W. H. Butcher Packing Co. v. Cincinnati Butchers' Supply Co., 10 Cir., 35 F.2d 567, 569;

National Sweeper Co. v. Bissell Carpet Sweeper Co., 2 Cir., 249 F. 196, 199; Hansen v. Slick, 3 Cir., 230 F. 627, 632, 633.